ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

APR 0 9 2010

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

| | |
|---|---|
| BAKE ONE, INC.,<br>a Georgia corporation,<br><br>    Plaintiff,<br><br>v.<br><br>GREIG L. MARE; VIRGINIA ("GINNY")<br>L. MARE (a/k/a VIRGINIA<br>BROADFOOT); GLM VENTURE, LLC;<br>BRANT CONLEY; LANDMARK<br>PACKAGING, LLC; LINPARK SALES,<br>INC.; DONALD SCOTT GREENWAY;<br>EXPERT PERSONNEL SOLUTIONS,<br>LLC; DAWN THOMAS (f/k/a DAWN<br>BELL); LIPSEY LOGISTICS<br>WORLDWIDE, LLC; JOHN AND JANE<br>DOES 1-10 and JOHN DOE COMPANIES<br>1-10;<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>**1 10·CV-1046**<br><br>JURY TRIAL DEMANDED<br><br>**TCB** |

## COMPLAINT

Plaintiff Bake One, Inc. files this action against Defendants Greig L. Mare;

Virginia ("Ginny") L. Mare (a/k/a Virginia Broadfoot); GLM Venture, LLC; Brant

Conley; Landmark Packaging, LLC; Linpark Sales, Inc.; Donald Scott Greenway;

Expert Personnel Solutions, LLC; Dawn Thomas (f/k/a Dawn Bell); Lipsey

Logistics Worldwide, LLC; John and Jane Does 1-10 and John Doe Companies 1-

10 (collectively the "Defendants").

## PARTIES

1.

Plaintiff Bake One, Inc. ("Bake One" or "Plaintiff") is a Georgia corporation

that maintains its principal place of business at 1200-A Wilson Way, Suite 100,

Smyrna, Georgia, 30082.

2.

Defendant Greig L. Mare ("Mare") is a former employee of Bake One who

was the General Manager of Bake One.  Greig Mare is a resident of Georgia and

may be served with process at 314 Summer Garden Drive, Marietta, Georgia

30064.

3.

Defendant Virginia ("Ginny") L. Mare (a/k/a Virginia Broadfoot)

("Broadfoot") is the wife of Mare, is a resident of Georgia, and may be served with

process at 314 Summer Garden Drive, Marietta, Georgia 30064.

4.

Defendant GLM Venture, LLC ("GLM") is a Georgia limited-liability

company controlled by Mare and/or Broadfoot that maintains its principal place of

business at 1000 Whitlock Avenue, Suite 320, Marietta, GA 30064.  GLM Venture

may be served with process through its registered agent for service of process,

Greig L. Mare, at 1000 Whitlock Avenue, Suite 320, Marietta, GA 30064.

5.

Defendant Brant Conley ("Conley") is a former employee of Bake One who

was the Warehouse and Logistics Manager of Bake One.  Conley is a resident of

Georgia and may be served with process at 4695 Govanett Road, Powder Springs,

Georgia 30127.

6.

Defendant Landmark Packaging, LLC ("Landmark") is a Georgia limited-

liability company.  Landmark may be served with process through its registered

agent for service of process, Donald Scott Greenway, at 1434 Braxford Trace,

Lawrenceville, Georgia 30044.

7.

Defendant Linpark Sales, Inc. ("Linpark") is a Georgia corporation.  Linpark

may be served with process through its registered agent for service of process,

Donald Scott Greenway, at 1434 Braxford Trace, Lawrenceville, Georgia 30044.

8.

Defendant Donald Scott Greenway ("Greenway") is a resident of Georgia

and may be served with process at 1434 Braxford Trace, Lawrenceville, Georgia

30044.

9.

Defendant Expert Personnel Solutions, LLC ("EPS") is a Georgia limited-

liability company that maintains its principal place of business at 10010 Highway

92, Suite 150, Woodstock, GA 30188.  EPS may be served with process through its

registered agent for service of process, Dawn Thomas, at 3917 Buck Road, Powder

Springs, GA 30127.

10.

Defendant Dawn Thomas (f/k/a Dawn Bell) ("Thomas") is a resident of

Georgia and may be served with process at 3917 Buck Road, Powder Springs, GA

30127.

11.

Defendant Lipsey Logistics Worldwide, LLC ("Lipsey") is a Florida limited

liability company that maintains its principal place of business at 1701-D

Oakbrook Drive, Norcross, GA 30093, and that upon information and belief is

authorized to do business in Georgia.  Lipsey may be served with process through

its manager and member, Joseph Lipsey, III, at 1701-D Oakbrook Drive, Norcross, GA 30093.

12.

Defendants John and Jane Does 1 through 10 ("John Does") are additional individuals, presently unknown to Bake One, who upon information and belief were involved in the fraudulent bribery and kickback scheme underlying this lawsuit.

13.

Defendants John Doe Companies 1 through 10 (the "Doe Companies") are additional companies, presently unknown to Bake One, who upon information and belief were involved in the fraudulent bribery and kickback scheme underlying this lawsuit.

## JURISDICTION AND VENUE

14.

This Court has original subject matter jurisdiction in this case pursuant to 28 U.S.C. §§ 1331 and 1337 because Counts I and II arise under the laws of the United States, and this Court has supplemental jurisdiction over Bake One's state-law claims pursuant to 28 U.S.C. § 1367(a).

15.

Defendants are subject to the *in personam* jurisdiction of this Court because they reside within this jurisdiction, do business within this jurisdiction, and have committed acts within this jurisdiction giving rise to this Complaint.

16.

The John Doe and Doe Company Defendants are each subject to the *in personam* jurisdiction of this Court because, upon information and belief, they reside within this jurisdiction, transact business within this jurisdiction, and/or have committed tortious acts within this jurisdiction giving rise to this Complaint.

17.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and because a substantial part of the events that gave rise to the claims asserted in this Complaint occurred in this judicial district.

18.

Venue is also proper in this Court pursuant to 18 U.S.C. § 1965 because Defendants reside in this jurisdiction and transact business in this jurisdiction.

## NATURE OF THE CASE

19.

This action arises out of a fraudulent and criminal bribery and kickback scheme involving at least two former Bake One employees (Mare and Conley), Mare's wife (Broadfoot), a company created by Mare and Broadfoot (GLM), and certain outside vendors of Bake One (including Landmark, Linpark, EPS, and Lipsey) and their principals (including Greenway and Thomas). Pursuant to this scheme, which occurred over at least several years, Mare and Conley solicited and received payments of bribes or kickbacks from the vendors in exchange for directing lucrative Bake One business to the vendors with the common purpose and specific intent of obtaining commercial advantage and of defrauding Bake One.

20.

The bribes/kickbacks paid by the vendors to Mare or Conley totaled hundreds of thousands of dollars and were paid in various ways including but not limited to: in cash or by checks directly to Mare or Conley; by checks payable to a company, GLM, which was set up by Mare and his wife, Broadfoot, for the purpose of receiving and helping disguise the payments from the vendors; and by

payments to fictitious temporary employees which were cashed or deposited by Mare, Broadfoot, or GLM.

### 21.

As part of this scheme and as the *quid pro quo* for each vendor's payment of the bribes, Mare and Conley authorized, approved and maintained contracts or supply arrangements with the vendors, pursuant to which the vendors either charged Bake One for goods or services that were never provided or significantly overcharged Bake One for goods and services provided. Mare and Conley authorized and approved invoices from and Bake One payments to those vendors including payments for goods or services that were never provided and for goods and services provided at significant overcharges.

### 22.

As a result of the fraudulent scheme of Mare, Conley, and the other Defendants, Bake One has suffered in excess of $1,500,000 in damages, before trebling and not including punitive damages. The full extent of the fraud, and the full extent of Bake One's damages, has yet to be determined.

### 23.

The Complaint asserts claims for violations of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") and conspiracy to violate

RICO (18 U.S.C. § 1962(c) and (d)) (Counts I and II); violations of the Georgia

RICO Act and conspiracy to violate Georgia RICO (O.C.G.A. §§ 16-4-3 and 16-

14-4) (Counts III and IV); fraud (Count V); breach of duty of loyalty (Count VI);

breach of fiduciary duty (Count VII); aiding and abetting breaches of loyalty and

of fiduciary duty (Count VIII); conversion (Count X); money had and received

(Count XI); civil conspiracy (Count XII); punitive damages (Count XIII); and

attorneys' fees (Count XIV).

## FACTUAL BACKGROUND

### A.   Bake One and Its Rogue Employees

24.

Bake One's business involves manufacturing high quality bread and baked

goods that Bake One supplies and sells to bakery-cafes and through retail stores.

25.

Mare was employed by Bake One from on or about September 1, 1995

through on or about February 19, 2010.

26.

Mare became the General Manager of Bake One in or about 1998, and

continued in that position until he left Bake One's employment on or about

February 19, 2010.

27.

During certain periods of his employment with Bake One, Mare was also acting General Manager for Bake One's affiliate, Four Season's Distribution ("Four Seasons").

28.

As General Manager of Bake One, Mare had the authority to and did manage and oversee most of the day-to-day operations of Bake One.

29.

As General Manager of Bake One, Mare had responsibility for, *inter alia*, evaluating goods and services needed for Bake One's operations and retaining and entering into supply arrangements with vendors supplying those good and services.

30.

As General Manager of Bake One, Mare's responsibilities also included negotiating and approving pricing and terms under which vendors provided goods and services to Bake One.

31.

As General Manager of Bake One, Mare's responsibilities also included reviewing and approving vendor invoices for payment by Bake One.

- 10 -

32.

In early 2008, Mare and/or Broadfoot set up GLM as a Georgia limited liability company for the sole or primary purpose of using GLM to receive and seek to disguise bribe and kickback payments made by Bake One vendors.

33.

Conley was employed by Bake One as Warehouse and Logistics Manager from on or about March 5, 2007 through on or about October 11, 2009.

34.

As Warehouse and Logistics Manager for Bake One, Conley was responsible for arranging and supervising the transportation and shipping of Bake One products to bakery-cafes and to retail stores, including for signing bills of lading approving and authorizing particular shipments.

**B.     Bake One's Policy Against Gifts by Vendors**

35.

Since at least 2006, Bake One and its affiliates have had a policy (the "Gift Policy") that prohibits their employees from accepting from vendors--and prohibits vendors from providing to employees--gifts, entertainment, or anything else of value without paying for the fair value of the goods or services received.

- 11 -

36.

As employees of Bake One, Mare and Conley signed agreements agreeing to comply with Bake One's Gift Policy and/or were each informed about the Gift Policy.

37.

Bake One's vendors are also informed about the Gift Policy. Upon information and belief, Landmark, Linpark, EPS and Lipsey were each informed about the Gift Policy.

## C.   **Defendants' Unlawful Scheme and Conduct**

38.

As described in more detail below, Defendants participated in a fraudulent and criminal bribery and kickback scheme in which Bake One employees Mare and Conley solicited and received payments of bribes and kickbacks, directly and/or through Mare's wife (Broadfoot) or Mare's company (GLM), from certain of Bake One's vendors (including EPS, Landmark, Linpark and Lipsey), in exchange for Mare and/or Conley directing and maintaining lucrative Bake One business to and with the vendors.

39.

As part of this scheme, Bake One was fraudulently charged by at least one

vendor (EPS) for goods or services that were not provided, was fraudulently

overcharged by Landmark, Linpark, EPS and Lipsey (collectively, the "Vendor

Defendants") for goods and services that were provided, and was defrauded of the

honest and faithful services of its employees.

**1.    <u>Conduct Involving EPS</u>**

40.

EPS is engaged in the business of providing temporary staffing and

personnel services including hiring temporary personnel, managing payroll, and

performing employee background reviews.

41.

Thomas is the sole or primary owner and officer of EPS and controls EPS.

Thomas had personal knowledge of or involvement with all of the EPS conduct

alleged in this Complaint.

42.

Beginning in or about December 2005, EPS was retained at the direction of

Mare to provide personnel and staffing services to Bake One.

43.

As part of the fraudulent bribery and kickback scheme, EPS, with the

knowledge and involvement of Thomas, paid bribes and/or kickbacks to Mare,

Broadfoot, and GLM without Bake One's knowledge and for the purpose of

influencing Mare's conduct in relation to Bake One's affairs.

44.

Some portion of the invoices that Bake One paid EPS were used to fund the

bribe and kickback payments to Mare, Broadfoot, and GLM without Bake One's

knowledge and for the purpose of influencing Mare's conduct in relation to Bake

One's affairs.

45.

The bribes and kickback payments made by EPS were made in at least the

following ways:  by payments to fictitious temporary employees which were

cashed or deposited by Mare, Broadfoot, or GLM; and by additional payments to

GLM that did not involve fictitious employees.

46.

From in or about December 2005 through in or about September 2009, EPS,

at Mare's direction or with his knowledge and approval, submitted invoices to

Bake One for multiple fictitious temporary employees who were falsely

represented to have worked through EPS for Bake One.  These fictitious

employees included a "Virginia Broadfoot."

47.

Such invoices were submitted to Bake One for these fictitious employees via

mail and email and were false because the employment services set forth in the

invoices were never performed.

48.

EPS, Thomas, Mare, and Broadfoot knew that these employees were

fictitious and did not perform the work described in these invoices.

49.

In these invoices, EPS added its own standard markup on the amounts billed

for these fictitious employees.

50.

Mare approved these invoices for payment by Bake One, resulting in Bake

One making numerous payments by mail pursuant to these fraudulent invoices.

51.

The payments to these fictitious employees were then either cashed by or

deposited into the bank accounts of Mare, Broadfoot, and/or GLM.

52.

From in or about December 2005 through in or about September 2009, Bake One paid an amount in excess of $145,000 pursuant to these fraudulent invoices for fictitious employees. EPS directed these payments to Mare, Broadfoot, and GLM as bribes and kickbacks. At this time, however, the full extent of Bake One's damages from this conduct is not yet known.

53.

From in or about May 2008 through at least September 2009, EPS made numerous additional bribe/kickback payments to GLM that did not involve fictitious employees. These payments totaled in excess of $34,000, and some or all of these payments were delivered by mail or wire.

54.

These bribe and kickback payments were paid by EPS in exchange for Mare directing to EPS and permitting EPS to maintain lucrative Bake One staffing business.

55.

From 2005 through in or about December 2009, and as part of the bribery and kickback scheme, Mare, EPS and Thomas participated in fraudulent conduct to

deceive Bake One into believing that it was receiving staffing services from EPS at or below a fair market rate.

56.

As a result of this fraudulent conduct, EPS charged Bake One nearly $4,000,000 for personnel and staffing services provided or allegedly provided to Bake One. EPS used mail and email to submit invoices to Bake One, and payments by Bake One for these invoices were made by mail.

57.

In fact, invoices sent by EPS, and payments made by Bake One to EPS, included significant overcharges in excess of competitive market rates, without the knowledge of Bake One.

58.

With Mare's authorization and approval, for most of the period in which EPS provided staffing services to Bake One, EPS charged for those services at a markup of 38% to 41.75% of the hourly rate temporary employee payroll. However, the markup percentage for comparable and competitive staffing companies was significantly lower.

59.

At all relevant times, Mare reviewed EPS payroll and approved EPS invoices for payment by Bake One.

60.

Upon information and belief, from in or about December 2005 through in or about December 2009, the total markup overcharges invoiced by EPS to Bake One and paid by Bake One was in excess of $350,000, but the full extent of the damages and overcharges is not yet known.

61.

Thus, a significant portion of the nearly $4,000,000 paid by Bake One to EPS was the result of fraudulent conduct by which EPS invoiced Bake One for fictitious staffing services that were never performed and/or for services performed but billed at inflated rates; and EPS and Thomas paid some portion of the funds received from Bake One to Mare, Broadfoot, and GLM for purpose of influencing Mare's conduct in relation to Bake One affairs.

## 2.    **Conduct Involving Landmark and Linpark**

62.

Landmark is engaged in the business of, *inter alia*, supplying packaging products or acting as a broker for supplying packaging products.

63.

Linpark is engaged in the business of, *inter alia*, providing or acting as a broker to provide plastic packaging supplies and other products.

64.

Greenway is the sole or primary owner and officer of Landmark and Linpark and controls those companies.  Greenway is also a close personal friend of Mare. Greenway had personal knowledge of or involvement with all of the Landmark and Linpark conduct alleged in this Complaint.

65.

Beginning in 2000 and continuing through in or about September 2009, Linpark was retained by Bake One, at Mare's direction, to provide various products and services to Bake One, including plastic packaging supplies, chicken products, and various services.  The volume of goods and services provided by Linpark to Bake One significantly increased during the period from 2005 through 2008.

66.

Beginning in early 2007 and continuing through in or about November 2009, Landmark was retained by Bake One, at Mare's direction, to provide a variety of corrugated packaging supplies and services to Bake One.

67.

As part of the fraudulent bribery and kickback scheme, Linpark and
Landmark, with the knowledge and involvement of Greenway, paid bribes and/or
kickbacks to Mare and GLM without Bake One's knowledge and for the purpose
of influencing Mare's conduct in relation to Bake One's affairs.

68.

Some portion of the invoices Bake One paid to Linpark and Landmark were
used to fund the bribe and kickback payments to Mare and GLM, without Bake
One's knowledge and for the purpose of influencing Mare's conduct in relation to
Bake One's affairs.

69.

From upon information and belief at least as early as 2005 and possibly
earlier, and continuing into 2009, Linpark and Landmark made bribery and
kickback payments through numerous payments to Mare directly, either by check
or by cash payment. Upon information and belief, some of these payments were
made by mail or wire.

70.

From early 2008 through in or about November 2009, some of the bribes
and kickback payments made by Linpark and Landmark were made through

numerous payments to GLM, in a total amount in excess of $40,000. Upon information and belief, these payments were made by mail or wire.

71.

Upon information and belief, the total amount of Linpark and Landmark bribes/kickbacks paid to Mare and GLM were in excess of $100,000, but the full amount of these improper payments is not yet known.

72.

These bribes and kickbacks were paid by Linpark and Landmark in exchange for Mare directing to Linpark and Landmark and permitting Linpark and Landmark to maintain lucrative Bake One business.

73.

From in or around January 2007 through in or around November 2009, Mare, Landmark, and Greenway participated in fraudulent conduct designed to deceive Bake One into believing that it was receiving goods and services from Landmark at or below a fair market rate.

74.

As part of this conduct, in January 2007, Mare signed a written Supply Agreement with Landmark, without proper authorization from Bake One and in

contradiction to company policy, which purported to make Landmark the exclusive supplier of corrugated packaging products for Bake One.

75.

As a result of this conduct, Landmark charged Bake One in excess of $1,500,000 for corrugated packaging products provided or allegedly provided to Bake One.

76.

In fact, invoices sent by Landmark, and payments approved by Mare and made by Bake One to Landmark, included significant overcharges in excess of fair market rates, without the knowledge of Bake One.

77.

With Mare's authorization and approval, for most of the period in which Landmark provided goods to Bake One, Landmark charged for those goods at a price that upon information and belief was more than 25% higher than competitive market rates.

78.

As a result, upon information and belief, the total overcharges submitted by Landmark to Bake One, and paid by Bake One, were in excess of $400,000, but the full extent of damages and overcharges is not yet known.

79.

From at least as early as 2005 and through in or around October 2009, Mare,

Linpark, and Greenway participated in fraudulent conduct to deceive Bake One

into believing that it was receiving goods and services from Linpark at or below

market rates.

80.

As a result, Linpark charged Bake One in excess of $1,200,000 for plastic

packaging supplies, chicken products, and other goods or services provided or

allegedly provided to Bake One.

81.

In fact, invoices sent by Linpark, and payments approved by Mare and made

by Bake One to Linpark, included significant overages in excess of fair market

rates, without the knowledge of Bake One.

82.

With the authorization and approval of Mare, for most of the period in which

Linpark provided goods or services to Bake One, Linpark charged for those goods

at a price that upon information and belief averaged more than 25% higher than

competitive market rates.

- 23 -

83.

As a result, upon information and belief, the total overcharges submitted by Linpark to Bake One, and paid by Bake One, were in excess of $300,000, but the full extent of the damages and overcharges is not yet known.

84.

Landmark and Linpark used mail to submit invoices to Bake One, and payments by Bake One for these invoices were approved by Mare and were made by mail.

85.

Thus, a significant part of the more than $1,500,000 paid by Bake One to Landmark and a significant part of the more than $1,200,000 paid by Bake One to Linpark were the result of fraudulent conduct by which Landmark and Linpark invoiced Bake One for goods at inflated rates; and Landmark, Linpark, and Thomas paid some portion of the funds received from Bake One to Mare and GLM for the purpose of influencing Mare's conduct in relation to Bake One's affairs.

## 3. **Conduct Involving Lipsey**

86.

Lipsey is engaged in the business of providing or brokering shipping,

logistics, and transportation services, including arranging shipping routes,

managing shipping loads, and scheduling shipments.

87.

Beginning in or about August 2008, Lipsey was retained at the direction of

Bake One employees Mare or Conley to provide shipping and logistics services to

Bake One.

88.

Federal regulations applicable to brokers of transportation of motor vehicles

provide that such a "broker shall not give or offer anything of value to any shipper,

consignor, consignee (or their officers or employees) except inexpensive

advertising items given for promotional purposes." 49 C.F.R. § 371.9(b).

89.

As part of the fraudulent bribery and kickback scheme, Lipsey, with the

knowledge and involvement of its agent or employee, Michael Knaby ("Knaby)

and, upon information and belief, one or more John Doe Defendants who were or

are employees or officers of Lipsey, paid bribes and/or kickbacks to Conley and,

upon information and belief, to Mare, without Bake One's knowledge and for the purpose of influencing Conley's and Mare's conduct in relation to Bake One's affairs.

90.

Some portion of the invoice payments received by Lipsey from Bake One were used to fund the bribe and kickback payments to Conley, and, upon information and belief, to Mare, without Bake One's knowledge and for the purpose of influencing Conley's and Mare's conduct in relation to Bake One's affairs.

91.

Bribes and kickback payments to Conley were made in at least the following way: Lipsey or an affiliate issued checks payable to one or more employees of Lipsey or of a Lipsey affiliate, including to Knaby. Such employee(s), including Knaby, then cashed the checks and made numerous periodic cash payments to Conley of at least $2,000 per month while Conley was employed by Bake One.

92.

Upon information and belief, bribes and kickback payments were also paid by Lipsey to Mare while Mare was a Bake One employee, in the form of periodic cash payments or other payments to or on behalf of Mare.

- 26 -

93.

These bribes and kickbacks were paid by Lipsey in exchange for Mare and/or Conley directing to Lipsey, and permitting Lipsey to maintain, lucrative Bake One business.

94.

From in or about August 2008 through in or about February 2010, Defendants Mare, Conley, and Lipsey participated in a fraudulent scheme to deceive Bake One into believing that it was receiving shipping and logistics services at or below a fair market rate and to deceive Bake One into believing that Lipsey was properly arranging logistics routes for transportation of Bake One products.

95.

As part of this scheme, Mare signed a Logistics Services Contract with Lipsey dated October 10, 2008, without proper authorization from Bake One and in contradiction to company policy, which purported to provide for Lipsey to provide logistics and transportation services for Bake One at certain rates.  Knaby signed this Contract on behalf of Lipsey.

96.

As a result of this conduct, Lipsey charged Bake One in excess of

$1,300,000 for shipping and logistics services provided or allegedly provided to

Bake One.

97.

In fact, Lipsey was significantly and fraudulently overcharging Bake One,

with the approval and authorization of Conley and, upon information and belief,

Mare, in at least two ways.

98.

First, on numerous occasions, Conley, and/or, upon information and belief,

Mare, improperly authorized Lipsey to ship Bake One goods in multiple partially

full trucks going to a single or limited number of destinations rather than in fewer

full trucks going to multiple destinations. This conduct permitted Lipsey to charge

Bake One for more shipments than necessary and resulted in higher billings to

Bake One.

99.

Second, invoices sent by Lipsey to Bake One included significant

overcharges in excess of competitive market rates, without the knowledge of Bake

One.

100.

Upon information and belief, from in or about August 2008 through in or about February 2010, the total overcharges invoiced by Lipsey to Bake One were in excess of $300,000, but the full extent of the damages and overcharges is not yet known.

101.

Lipsey used mail or email to submit invoices to Bake One, and some of Bake One's payments for these invoices were made by mail.

102.

In October 2009, Conley left the employment of Bake One and was hired by Lipsey for whom he now works as an employee or consultant.

103.

In February 2010, Mare left the employment of Bake One and was hired by Lipsey for whom he now works as an employee or consultant.

104.

Thus, a significant portion of the more than $1,300,000 invoiced by Lipsey to Bake One was the result of fraudulent conduct by which Lipsey invoiced Bake One for excessive truck loads that were not full and/or at inflated rates; and Lipsey

paid some portions of the funds received from Bake One for the purpose of

influencing Conley's and Mare's conduct in relation to Bake One's business.

## D.    Fraudulent Concealment

105.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

106.

Defendants fraudulently concealed from Bake One their actions alleged

herein.

107.

Defendants fraudulently concealed their actions from Bake One by failing to

disclose that improper bribes/kickbacks were being made by EPS, Landmark,

Linpark, and Lipsey to influence Mare's and/or Conley's conduct in relation to

Bake One's affairs.

108.

Defendants fraudulently concealed their actions from Bake One by falsely

leading Bake One to believe that it was receiving products and services from EPS,

Landmark, Linpark, and Lipsey at or below fair market rates.

109.

Defendants Mare, Broadfoot, GLM, EPS, and Thomas fraudulently concealed their actions from Bake One by failing to disclose that Bake One was making payments for services of fictitious employees that were never provided to Bake One and by issuing invoices which falsely represented that these services were performed for Bake One.

110.

Defendants Conley, Lipsey, one or more John Doe Defendants, and upon information and belief, Mare, fraudulently concealed their actions from Bake One by Lipsey issuing invoices to Bake One that concealed the fact that Lipsey was improperly shipping only partially loaded trucks to increase the payments by Bake One to Lipsey.

111.

Such concealment prevented Bake One from discovering its claims herein because Bake One was led to believe that the services and products were being performed at market rates and without impropriety as reflected in the invoices it received and paid.

112.

Upon information and belief, other John Does and Doe Companies,

presently unknown to Bake One, were also involved in this fraudulent scheme.

## COUNT I

## (Violations of Federal R.I.C.O., 18 U.S.C. § 1962(c) Against All Defendants)

113.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

114.

This claim is brought against all of the Defendants, each of whom

constitutes "person" within the meaning of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1961(3) and 1964(c).

115.

At the times alleged in this Complaint, the Defendants formed an

association-in-fact for the purpose of defrauding Bake One and receiving and

paying criminal bribes and kickbacks in exchange for lucrative Bake One business.

This association-in-fact constituted an "enterprise" as defined in RICO, 18 U.S.C.

§§ 1961(4) and 1962(c) (hereinafter, the "Enterprise").

116.

At all relevant times, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

117.

At all relevant times, the Defendants conducted and participated, directly and indirectly, in the conduct of the affairs of the Enterprise through a "pattern of racketeering activity" associated with the Enterprise within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c), and for the unlawful purpose of defrauding Bake One.

118.

Specifically, the Defendants conducted the affairs of the Enterprise through a fraudulent bribery and kickback scheme in which Mare and Conley solicited and received bribes and kickback payments from the Vendor Defendants in exchange for directing and maintaining lucrative Bake One business to and with the Vendor Defendants and for authorizing the Vendor Defendants to engage in false billing and overcharging of Bake One.

119.

In connection with the conduct alleged in the paragraphs above, Defendants

on more than two occasions intentionally and knowingly used or caused to be used

mail delivered by the United States Postal Service and wire transmissions in

furtherance of the schemes and artifices used to defraud Bake One. This conduct

constituted mail fraud pursuant to 18 U.S.C. § 1341, wire fraud pursuant 18 U.S.C.

§ 1343, and "racketeering activity" within the meaning of 18 U.S.C. § 1961(1).

120.

The acts, practices and conduct alleged above involve numerous acts of

racketeering activity occurring between at least as early as 2005 and through in or

about February 2010, and constitute a pattern of racketeering activity within the

meaning of 18 U.S.C. § 1961(5).

121.

The racketeering acts alleged above are interrelated in that the common goal

and purpose was to benefit the Enterprise through a series of repeated frauds

carried out by related participants against a single victim, Bake One, and

employing a similar method of commission: payment by the Vendor Defendants of

bribes and kickbacks to Mare, Conley, Broadfoot and/or GLM, in exchange for

which Mare and/or Conley directed and permitted the maintenance of Bake One

business to the Vendor Defendants and authorized and approved the Vendor Defendants' fictitious and/or inflated invoices for purported goods or services, with the Defendants misrepresenting to Bake One either that such goods or services were performed or that the goods or services were performed or provided appropriately and at or below market rates. The racketeering activity of the Enterprise was not confined to isolated events, but rather amounted to repeated and continuous racketeering activity over a period of at least several years.

122.

The Defendants have directly and indirectly conducted and participated in the affairs of the Enterprise through the pattern of racketeering activity described above and in violation of 18 U.S.C. § 1962(c). By reason of this violation, Bake One has been directly and proximately injured, by reason of Defendants' violations of 18 U.S.C. § 1962(c), in its business and/or property and has been damaged in a significant amount to be proven at trial, but estimated to be in an amount in excess of $1,500,000, before trebling and not including punitive damages.

123.

Under 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Bake One for the amount of its ultimate loss, trebled, plus punitive damages, cost and attorneys' fees.

## COUNT II

### (Conspiracy to Commit Violations of Federal R.I.C.O., 18 U.S.C. § 1962(d) Against All Defendants)

124.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

125.

At all relevant times, Defendants were associated with the Enterprise and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

126.

Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth in Count I and the other acts alleged in this Complaint, in violation of 18 U.S.C. § 1962(d).

127.

Plaintiff's business was damaged as a proximate result of Defendants' violations of 18 U.S.C. § 1962(d). Among other things, Plaintiff suffered losses in its business and/or property and has been damaged in a significant amount to be

proven at trial, but estimated to be in an amount in excess of $1,500,000, before trebling and not including punitive damages.

128.

As alleged herein and specifically set forth in the paragraphs above, among other things, Defendants conspired to defraud Plaintiff through a fraudulent bribery and kickback scheme in which Mare and Conley solicited and received bribes or kickbacks from the Vendor Defendants in exchange for directing lucrative Bake One business to the Vendor Defendants and authorizing the Vendor Defendants to engage in false billing and overcharging of Bake One.

129.

As a result of its participation in the conspiracy, as alleged herein, Defendants are liable to Bake One for its losses in an amount to be determined at trial.

130.

Pursuant to 18 U.S.C. § 1964(c), Defendants are jointly and severally liable to Bake One for the amount of its ultimate loss, trebled, plus punitive damages, cost and attorneys' fees.

## COUNT III

### (Violations of Georgia R.I.C.O. Against All Defendants)

131.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

132.

This claim is brought against all of the Defendants, each of whom constitutes a "person" within the meaning of O.C.G.A. § 16-14-4(a) and (b).

133.

At the times alleged in this Complaint, the Defendants were an association-in-fact that constituted an "enterprise" as defined in O.C.G.A. § 16-14-3(6) and 16-14-4(a) and (b) (hereinafter, the "Enterprise").

134.

At all times relevant, the Defendants were associated with the Enterprise within the meaning of O.C.G.A. § 16-14-4(b).

135.

At all relevant times, the Defendants conducted and participated, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(8) and (9)(A)(ix)

and (xxix), namely, mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, and for the unlawful and common purpose of defrauding Bake One.

136.

Specifically, the Defendants conducted the affairs of the Enterprise through a fraudulent bribery and kickback scheme in which Mare and Conley solicited and received bribes and kickback payments from the Vendor Defendants in exchange for directing and maintaining lucrative Bake One business to and with the Vendor Defendants and for authorizing the Vendor Defendants to engage in false billing and overcharging of Bake One.

137.

In connection with the conduct alleged in the paragraphs above, Defendants on more than two occasions intentionally and knowingly used or caused to be used mail delivered by the United States Postal Service and wire transmissions in furtherance of the schemes and artifices used to defraud Bake One. This conduct constituted mail fraud pursuant to 18 U.S.C. § 1341, wire fraud pursuant 18 U.S.C. § 1343, and racketeering activity within the meaning of O.C.G.A. § 16-14-3(8).

138.

The acts, practices and conduct alleged above involve numerous acts of racketeering activity occurring between at least as early as 2005 and through in or about February 2010, and constitute a pattern of racketeering activity within the meaning of O.C.G.A. § 16-14-3(8).

139.

The racketeering acts alleged above are interrelated in that the common goal and purpose was to commercially benefit the Enterprise through a series of repeated frauds carried out by related participants against a single victim, Bake One, and employing a similar method of commission: payment by the Vendor Defendants of bribes and kickbacks to Mare, Conley, Broadfoot, and/or GLM, in exchange for which Mare and/or Conley directed and permitted the maintenance of Bake One business to the Vendor Defendants and authorized and approved the Vendor Defendants' fictitious and/or inflated invoices for purported goods or services, with the Defendants misrepresenting to Bake One either that such goods or services were performed and/or that the goods or services were performed or provided appropriately and at or below market rates. The racketeering activity of the Enterprise was not confined to isolated events but rather amounted to repeated and continuous racketeering activity over a period of at least several years.

- 40 -

140.

The Defendants have directly and indirectly conducted and participated in the affairs of the Enterprise through the pattern of racketeering activity described above and in violation of O.C.G.A. § 16-14-3. As a result of this violation, Bake One has been directly and proximately injured, by Defendants' violations of O.C.G.A. § 16-14-4(b) and (c), in its business and/or property and has been damaged in a significant amount to be proven at trial, but estimated to be in an amount in excess of $1,500,000, before trebling and not including punitive damages.

141.

Under O.C.G.A. §16-14-6(c), Defendants are jointly and severally liable to Bake One for the amount of its ultimate loss, trebled, plus punitive damages, costs and attorneys' fees.

## COUNT IV

### (Conspiracy to Commit Georgia's R.I.C.O. Act Violations Against All Defendants – O.C.G.A. § 16-14-4(c))

142.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

143.

At all relevant times, Defendants were associated with the Enterprise and conspired to violate O.C.G.A. § 16-14-4(a) and (b); that is, agreed to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of O.C.G.A. § 16-14-4.

144.

Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth in Count I and the other acts alleged in this Complaint, in violation of O.C.G.A. § 16-14-4(c).

145.

Plaintiff's business was damaged as a proximate result of Defendants' violations of O.C.G.A. § 16-14-4(c). Among other things, Plaintiff suffered losses in its business and/or property and has been damaged in a significant amount to be proven at trial, but estimated to be in an amount in excess of $1,500,000, before trebling and not including punitive damages.

146.

As alleged herein and specifically set forth in the paragraphs above, among other things, Defendants conspired to defraud Plaintiff through a fraudulent bribery

and kickback scheme in which Mare and Conley solicited and received bribes or kickbacks from the Vendor Defendants in exchange for directing lucrative Bake One business to the Vendor Defendants and authorizing the Vendor Defendants to engage in false billing and overcharging of Bake One.

147.

As a result of its participation in the conspiracy, as alleged herein, Defendants are liable to Bake One for its losses in an amount to be determined at trial.

148.

Pursuant to O.C.G.A. § 16-14-6(c), Defendants are jointly and severally liable to Bake One for the amount of its ultimate loss, trebled, plus punitive damages, cost and attorneys' fees.

## COUNT V

### (Fraud Against All Defendants)

149.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

150.

The Defendants falsely, fraudulently, and with the intent to defraud Bake One, concealed the material facts that the Vendor Defendants were paying bribes and kickbacks to Mare, Broadfoot, GLM, and/or Conley in exchange for being directed and permitted to maintain lucrative Bake One business.

151.

From in or around December 2005 and continuing into in or around September 2009, EPS and Thomas, with the knowledge and participation of Mare, Broadfoot, and GLM, falsely, fraudulently, and with the intent to defraud Bake One, billed Bake One, at Mare's direction, for multiple fictitious employee accounts, including an account for "Virginia Broadfoot." No services were performed by the persons named on these fictitious accounts, and payments made by Bake One to EPS on behalf of these fictitious employees were deposited into accounts belonging to Mare, Broadfoot, and GLM.

152.

From in or around December 2005 and continuing into in or around December 2009, EPS, Thomas, and Mare falsely, fraudulently, and with the intent to defraud Bake One represented to Bake One that EPS's prices charged to Bake One for staffing services were at or below fair market rates and concealed from

Bake One that EPS was submitting inflated invoices to Bake One which Mare was approving for payment.

153.

From upon information and belief at least as early as 2005 and continuing into in or around October 2009, Mare, Linpark, and Greenway falsely, fraudulently, and with the intent to defraud Bake One represented to Bake One that Linpark's prices charged to Bake One for plastic packaging supplies, chicken products, and other goods or services were at or below fair market rates and concealed from Bake One that Linpark was submitting inflated invoices to Bake One which Mare was approving for payment.

154.

From in or around January 2007 and continuing into in or around November 2009, Mare, Landmark, and Greenway falsely, fraudulently, and with the intent to defraud Bake One represented to Bake One that Landmark's prices charged to Bake One for corrugated packaging supplies and other goods or services were at or below fair market rates and concealed from Bake One that Landark was submitting inflated invoices to Bake One which Mare was approving for payment.

155.

From in or around August 2008 and continuing into in or around February

2010, Conley, Lipsey, and upon information and belief, Mare, falsely, fraudulently,

and with the intent to defraud Bake One represented to Bake One that Lipsey's

prices charged to Bake One for shipping and logistics services were at or below

fair market rates, and concealed from Bake One that Lipsey was submitting

inflated invoices to Bake One for which Conley or Mare were approving payment.

156.

From in or around August 2008 and continuing into at least in or around July

2009, Conley, Lipsey, and upon information and belief,  Mare, falsely,

fraudulently, and with the intent to defraud Bake One represented to Bake One that

Lipsey was providing proper logistics services that would include scheduling full

truck loads of Bake One goods to multiple destinations, and concealed from Bake

One that Lipsey was shipping in multiple partially full trucks going to a single or

limited number of destinations rather than in fewer full trucks, resulting in higher

billings to Bake One.

157.

EPS, Landmark, Linpark, and Lipsey, with the knowledge and participation

of Mare, Conley, Thomas, and Greenway, knowingly inflated their invoices and

overcharged Bake One and submitted such invoices with the intent to deceive and to defraud Bake One.

158.

The Defendants, falsely, fraudulently, and with the intent to defraud Bake One, deprived Bake One of the honest and faithful services of Mare and Conley.

159.

These misrepresentations constitute false representations and/or omissions of material facts that were made falsely, fraudulently, and with the intent to defraud Bake One.

160.

These material misrepresentations were made with the intent to induce Bake One to pay for goods and services that were not provided, and/or to pay for goods and services at amounts significantly above fair market value or for which Bake One was otherwise overcharged.

161.

Bake One reasonably and justifiably relied upon these material misrepresentations and was thus was induced to procure goods and services from and to remit payment to EPS, Landmark, Linpark, and Lipsey.

162.

Bake One had no knowledge of the falsity of these material

misrepresentations.

163.

As a proximate result of the foregoing, Bake One has suffered damages in an

amount to be fully proven at trial, but estimated to be at least $1,500,000 ,

exclusive of punitive damages, interest, costs, and attorneys' fees.

164.

Defendants are jointly and severally liable to Bake One for the amount of its

damages.

165.

Defendants' conduct in defrauding Bake One was gross, wanton, willful and

involved a high degree of moral culpability.

## COUNT VI

### (Breach of Duty of Loyalty Against Mare and Conley)

166.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

167.

As an employee and the General Manager of Bake One, Mare owed Bake

One a duty to serve the interests of Bake One with loyalty and good faith.

168.

As an employee and the Warehouse and Logistics Manager of Bake One,

Conley owed Bake One a duty to serve the interests of Bake One with loyalty and

good faith.

169.

Mare breached this duty of loyalty owed to Bake One by his conduct alleged

in this Complaint, including but not limited to authorizing and approving Bake One

contracts and supply arrangements with the Vendor Defendants that fraudulently

charged Bake One for services that were not provided and overcharged Bake One

for goods and services that were provided, in exchange for kickbacks and other

unlawful payments from the Vendor Defendants that personally benefited Mare at

the expense of Bake One.

170.

Conley breached his duty of loyalty owed to Bake One by his conduct

alleged in this Complaint, including but not limited to facilitating transportation

arrangements with Lipsey that fraudulently overcharged Bake One for goods and

services that were provided, in exchange for kickbacks and other unlawful payments from Lipsey that personally benefited Conley at the expense of Bake One.

171.

Mare's breaches of his duty of loyalty to Bake One have proximately caused damage to Bake One in excess of $1,500,000, and in further amounts to be proven at trial.

172.

Conley's breaches of his duty of loyalty to Bake One have proximately caused damage to Bake One in excess of $300,000, and in further amounts to be proven at trial.

173.

Mare and Conley are jointly and severally liable to Bake One for the amount of Bake One's damages.

174.

Mare's and Conley's conduct was gross, wanton, willful, and involved a high degree of moral culpability.

## COUNT VII

### (Breach of Fiduciary Duty Against Mare)

175.

Bake One incorporates by reference the preceding paragraphs of this
Complaint.

176.

As General Manager of Bake One, Mare had the authority to negotiate and
enter into vendor and supply arrangements on behalf of Bake One, to approve
payment of invoices by Bake One, and to otherwise bind Bake One.

177.

As General Manager of Bake One, Mare owed Bake One a fiduciary duty to
serve the interests of Bake One with the utmost loyalty and good faith.

178.

Mare breached this fiduciary duty owed to Bake One by his conduct alleged
in this Complaint, including but not limited to his conduct in creating fictitious
employees of Bake One, paying those fictitious employees, and then
misappropriating those funds for his own personal benefit at the expense of Bake
One; and by authorizing and approving Bake One contracts and supply
arrangements with the Vendor Defendants that overcharged Bake One for goods

and services in exchange for kickbacks and other unlawful payments from those

Defendants that personally benefited Mare at the expense of Bake One.

179.

Mare's breaches of his fiduciary duty to Bake One have proximately caused

damage to Bake One in an amount of $1,500,000, and in further amounts to be

proven at trial.

180.

The conduct of Mare was gross, wanton, willful, and involved a high degree

of moral culpability.

## COUNT VIII

**(Aiding and Abetting Breaches of Duty of Loyalty and of Fiduciary Duty
Against Broadfoot, GLM, Conley, Landmark, Linpark, Greenway, EPS,
Thomas, and Lipsey)**

181.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

182.

Mare and Conley breached their duties of loyalty owed to Bake One as

alleged in Count VI above.

183.

Mare breached his fiduciary duty owed to Bake One as alleged in Count VII above.

184.

Through their improper actions and wrongful conduct described above, and without privilege, Broadfoot, GLM, Greenway, Landmark, Linpark, Thomas, EPS, and Lipsey acted to procure breaches of Mare's and Conley's duty of loyalty to Bake One and of Mare's fiduciary duty to Bake One.

185.

Broadfoot, GLM, Greenway, Landmark, Linpark, Thomas, EPS, and Lipsey procured Mare's and Conley's breaches of their duty of loyalty, and Mare's breaches of his fiduciary duty, with full knowledge that Mare and Conley owed these duties to Bake One.

186.

Broadfoot, GLM, Greenway, Landmark, Linpark, Thomas, EPS, and Lipsey acted purposefully, with malice, and with the intent to injure Bake One.

187.

The tortious and wrongful conduct of Broadfoot, GLM, Greenway,

Landmark, Linpark, Thomas, EPS, and Lipsey procured breaches of Mare's and

Conley's duty of loyalty to Bake One and of Mare's fiduciary duty to Bake One.

188.

The tortious and wrongful conduct of Broadfoot, GLM, Greenway,

Landmark, Linpark, Thomas, EPS, and Lipsey proximately caused damage to Bake

One in an amount to be proven at trial, but estimated to be in excess of $1,500,000.

189.

Broadfoot, GLM, Greenway, Landmark, Linpark, Thomas, EPS, and Lipsey

are jointly and severally liable to Bake One for the amount of these damages.

190.

The conduct of Broadfoot, GLM, Greenway, Landmark, Linpark, Thomas,

EPS, and Lipsey was gross, wanton, willful, and involved a high degree of moral

culpability.

## COUNT IX

### (Conversion Against Mare, Broadfoot, and GLM)

191.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

192.

As explained above, Mare, with the knowledge and participation of EPS, Thomas, Broadfoot and GLM, used his access to and control over Bake One's hiring of temporary employees to create fictitious employee accounts, including one for "Virginia Broadfoot," and to facilitate payments by Bake One to EPS on behalf of those fictitious employees for services that were never provided. Payments to these fictitious employees were then either cashed by or deposited into bank accounts belonging to Mare, Broadfoot, and GLM.

193.

The amounts paid by Bake One to EPS on behalf of these fictitious employees, and then either cashed by or deposited into bank accounts belonging to Mare, Broadfoot, and GLM, constituted a specific and identifiable sum of money to which Bake One maintained a right of immediate possession.

194.

Mare, Broadfoot, and GLM have wrongfully retained the proceeds of these payments and have exercised dominion and control over this money in contravention to the rights of Bake One.

195.

This wrongful conduct resulted in Mare, Broadfoot, and GLM (a) exercising an unauthorized right of ownership of money properly belonging to Bake One in hostility to the rights of Bake One; (b) exercising dominion and control over money properly belonging to Bake One inconsistent with the rights of Bake One; and (c) appropriating money, without authorization, properly belonging to Bake One.

196.

As a proximate result of this conversion by these Defendants, Bake One has been damaged in an amount of at least $140,000, with further amounts to be proven at trial.

197.

Mare, Broadfoot, and GLM are jointly and severally liable to Bake One for the amount of its damages.

198.

Mare's, Broadfoot's, and GLM's  conduct in converting Bake One funds

was gross, wanton, willful, and involved a high degree of moral culpability.

## COUNT X

### (Aiding and Abetting Conversion Against EPS and Thomas)

199.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

200.

Mare, Broadfoot, and GLM are liable for conversion as alleged in Count IX.

201.

Through their improper actions and wrongful conduct described above, and

without privilege, EPS and Thomas acted to procure Mare's, Broadfoot's, and

GLM's conversion of funds from Bake One.

202.

EPS and Thomas procured Mare's, Broadfoot's, and GLM's conversion of

funds from Bake One with full knowledge that the converted specific and

identifiable sums:  were wrongfully sent to and retained by Mare, Broadfoot, and

GLM; properly belonged to Bake One; and were being held by Mare, Broadfoot, and GLM in contravention to the rights of Bake One.

203.

EPS and Thomas acted purposefully, with malice, and with the intent to injure Bake One.

204.

The tortious and wrongful conduct of EPS and Thomas procured Mare's, Broadfoot's, and GLM's conversion of funds from Bake One.

205.

The tortious and wrongful conduct of EPS and Thomas proximately caused damage to Bake One in an amount of at least $140,000, with further amounts to be proven at trial.

206.

EPS and Thomas are jointly and severally liable to Bake One for the amount of Bake One's damages.

207.

EPS's and Thomas's conduct was gross, wanton, willful, and involved a high degree of moral culpability.

- 58 -

## COUNT XI

### (Money Had and Received Against All Defendants)

208.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

209.

As described and alleged in this Complaint, Defendants received money from Bake One as a result of Defendants' racketeering, fraud, conversion, and other unlawful conduct perpetrated against Bake One.

210.

As a result of their unlawful conduct, Defendants have been unjustly enriched at the expense of Bake One.

211.

Bake One is the true and rightful owner of all monies had and received by the Defendants as a result of Defendants' racketeering, fraud, conversion, and other unlawful conduct perpetrated against Bake One.

212.

As a matter of equity, good conscience, justice, and fairness, Bake One is

entitled to the full return of such monies had and received by Defendants in an

amount to be proven at trial.

213.

The Defendants are jointly and severally liable to Bake One for the amount

of these damages.

214.

The conduct of the Defendants was gross, wanton, willful, and involved a

high degree of moral culpability.

## **COUNT XII**

### **(Civil Conspiracy Against All Defendants)**

215.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

216.

As described above, the Defendants, acting in concert, engaged in conduct

constituting fraud, conversion, breaches of the duty of loyalty and breaches of

fiduciary duty, aiding and abetting breaches of the duty of loyalty and breaches of fiduciary duty, and other tortious conduct.

217.

Each of the Defendants agreed to enter into a conspiracy to accomplish a common unlawful design, to wit, a fraudulent and criminal bribery and kickback scheme in which Mare, Conley, Broadfoot, and GLM solicited and received bribes and kickback payments from Landmark, Linpark, Greenway, EPS, Thomas, and Lipsey, in exchange for Mare and/or Conley directing lucrative Bake One business to the Vendor Defendants in connection with which the Vendor Defendants charged Bake One for services that were not provided and/or overcharged for goods and services that were provided.

218.

As a result of the Defendants' conspiracy, Bake One has been damaged in an amount of at least $1,500,000, and in further amounts to be proven at trial.

219.

Defendants are jointly and severally liable to Bake One for the amount of these damages.

220.

The conduct of the Defendants was gross, wanton, willful, and involved a high degree of moral culpability.

## COUNT XIII

### (Punitive Damages Against All Defendants)

221.

Bake One incorporates by reference the preceding paragraphs of this Complaint.

222.

Defendants' intentional efforts to conspire against, to deceive and to defraud, and to commit other wrongful acts against Bake One constitute willful misconduct, fraud, malice, wantonness, and/or an entire want of care that raises the presumption of conscious indifference to consequences.

223.

Defendants' actions described above warrant an award of punitive damages. Such an award is necessary to deter the Defendants from engaging in such tortious and wrongful conduct in the future.

224.

Defendants acted with the specific intent to cause harm to Bake One thus

removing any cap or limitation on the amount which may be awarded  as punitive

damages in accordance with O.C.G.A. § 51-12-5.1(f).

## COUNT XIV

### (Attorneys' Fees and Expenses Against All Defendants)

225.

Bake One incorporates by reference the preceding paragraphs of this

Complaint.

226.

As described above, Defendants have acted in bad faith, have been

stubbornly litigious, and have caused Bake One unnecessary trouble and expense.

227.

Accordingly, pursuant to O.C.G.A. § 13-6-11, Bake One is entitled to

recover from Defendants all costs and expenses incurred from pursuing this

lawsuit, including reasonable attorneys' fees.

## JURY DEMAND

Bake One demands a trial by jury on all triable issues.

## **PRAYER**

WHEREFORE, Bake One respectfully requests judgment against the

Defendants, jointly and severally, as follows:

(1)     Under the allegations of COUNT I (Federal R.I.C.O.):  for judgment

against all the Defendants, jointly and severally, in an amount equal to

three times Bake One's actual damages to be proven at trial, which

actual damages are estimated to be in excess of $1,500,000; plus

punitive damages and litigation expenses, including attorneys' fees --

all in accordance with 18 U.S.C. § 1964(c);

(2)     Under the allegations of COUNT II (Conspiracy to violate Federal

R.I.C.O.), for judgment against all the Defendants, jointly and

severally, in an amount equal to three times Bake One's actual

damages to be proven at trial, which actual damages are estimated to

be in excess of $1,500,000; plus punitive damages and litigation

expenses, including attorneys' fees -- all in accordance with 18 U.S.C.

§ 1964(c);

(3)     Under the allegations of COUNT III (Georgia R.I.C.O.):  for

judgment against all the Defendants, jointly and severally, in an

amount equal to three times Bake One's actual damages to be proven

at trial, which actual damages are estimated to be in excess of

$1,500,000; plus punitive damages and litigation expenses, including

attorneys' fees -- all in accordance with O.C.G.A. § 16-14-6(c);

(4)     Under the allegations of COUNT IV (Conspiracy to violate Georgia

R.I.C.O.), for judgment against all the Defendants, jointly and

severally, in an amount equal to three times Bake One's actual

damages to be proven at trial, which actual damages are estimated to

be in excess of $1,500,000; plus punitive damages and litigation

expenses, including attorneys' fees -- all in accordance with O.C.G.A.

§ 16-14-6(c);

(5)     Under the allegations of COUNT V (Fraud): for judgment against all

the Defendants, jointly and severally, for Bake One's actual damages

in an amount to be proven at trial, but which is estimated to be in

excess of $1,500,000;

(6)     Under the allegations of COUNT VI (Breach of Duty of Loyalty): for

judgment against Defendants Mare and Conley, jointly and severally,

in an amount to be proven at trial, but estimated to be in excess of $1,500,000;

(7)   Under the allegations of COUNT VII (Breach of Fiduciary Duty):  for judgment against Mare, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $1,500,000;

(8)   Under the allegations of COUNT VIII (Aiding and Abetting Breach of Fiduciary Duty and Breach of Fiduciary Duty):  for judgment against Defendants Broadfoot, GLM, Conley, Landmark, Linpark, Greenway, EPS, Thomas, and Lipsey, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $1,500,000;

(9)   Under the allegations of COUNT IX (Conversion):  for judgment against Defendants Mare, Broadfoot, and GLM, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $140,000;

(10)  Under the allegations of COUNT X (Aiding and Abetting Conversion):  for judgment against Defendants EPS and Thomas, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $140,000;

- 66 -

(11)   Under the allegations of COUNT XI (Money Had and Received):  for judgment against all Defendants, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $1,500,000;

(12)   Under the allegations of COUNT XII (Civil Conspiracy):  for judgment against all Defendants, jointly and severally, in an amount to be proven at trial, but estimated to be in excess of $1,500,000;

(13)   For punitive damages, in an amount to be determined in the enlightened conscience of the jury;

(14)   For attorneys fees, pursuant to 18 U.S.C. § 1964(c), O.C.G.A. §§ 16-14-6(c) and 13-6-11;

(15)   For pre and post-judgment interest as allowed by law;

(16)   For all costs of this action; and

(17)   For such other general and further relief as the Court deems just and proper.

This _9th_ day of April, 2010.

TROUTMAN SANDERS LLP

Mark S. VanderBroek
Georgia Bar No. 724440
Christopher A. Wiech
Georgia Bar No. 757333
Bradley M. Davis
Georgia Bar No. 141505
Bradley J. Harrison
Georgia Bar No. 422139

Bank of America Plaza, Suite 5200
600 Peachtree Street, NE
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3900 (facsimile)