## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

BAKE ONE, INC., a Georgia     :
Corporation,     :
    :
    Plaintiff,     :
    :
v.     :      Case No.: 1 10:CV-1046
    :
GREIG L. MARE; VIRGINIA     :      JURY TRIAL
("GINNY") L. MARE (a/k/a     :      DEMANDED
VIRGINIA BROADFOOT); GLM     :
VENTURE, LLC; BRANT     :
CONLEY; LANDMARK     :
PACKAGING, LLC; LINPARK     :
SALES, INC.; DONALD SCOTT     :
GREENWAY; EXPERT     :
PERSONNEL SOLUTIONS, LLC;     :
DAWN THOMAS (f/k/a DAWN     :
BELL); LIPSEY LOGISTICS     :
WORLDWIDE, LLC; JOHN AND     :
JANE DOES 1-10 and JOHN DOE     :
COMPANIES 1-10;     :
    :
    Defendants.

## EXPERT PERSONNEL SOLUTIONS, LLC AND DAWN THOMAS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE AND MOTION TO STRIKE TESTIMONY AND THE REPORT OF CECIL EUGENE HORNE

**COME NOW** Defendants Expert Personnel Solutions, LLC ("EPS")

and Dawn Thomas (f/k/a Dawn Bell) ("Thomas") (hereinafter also

collectively referred to herein as "Defendants"), and file this, their

Memorandum of Law In Support of their Motion In Limine and Motion to

Strike the Testimony and Expert Report of Cecil Eugene Horne and show the Court as follows:

## **INTRODUCTION**

Plaintiff's purported expert, Cecil Eugene Horne ("Horne") seeks to invade the province of the jury and this Court and to offer purely speculative opinions as shown by his Report dated June 22, 2011.  Essentially, Horne, who claims to be an expert in the field of labor staffing, seeks to provide an opinion that Thomas and Greig Mare ("Mare") were "colluding" together to harm the Plaintiff.  In addition, Horne plans to provide an opinion as to what the proper legal standard is for Thomas' liability for any alleged shortcomings of EPS.  Horne further seeks to offer speculative opinions and opinions involving the states of mind of Thomas and Mare, two people he has never met.

Since Horne's opinions, as outlined below, are (a) purely speculative, (b) are beyond his area of alleged expertise, (c) will not assist the trier of fact (and, therefore, are not proper subjects for expert testimony), (d) seek to instruct the jury on points of law, which is solely this Court's obligation, and/or (e) concern the state of mind of a witness, this Court should strike Horne's expert report and deposition testimony to prevent Horne from offering any opinions concerning alleged collusion between Thomas and

Mare and to prevent Horne from charging the jury as to what the law is concerning Thomas' liability.  For the same reasons, this Court should not allow Horne to testify at trial on the subjects set forth below.

## STATEMENT OF FACTS

Plaintiff retained Horne as an expert and to give opinions as to (1) the reasonableness of the markup rates charged by EPS to Plaintiff for labor staffing services EPS provided Plaintiff and (2) other issues relating to the staffing services industry and to EPS' providing of staffing services to Plaintiff.  (See Deposition of Cecil Eugene Horne, hereinafter the "Horne Depo.," at p. 11 and Ex. 170, p. 2).

Horne expressed two opinions, notated as "A" and "B" in his Report. (See Id.).  In Opinion "A," Horne concludes that the increase in EPS' markup from 35% to 41% was the result of "collusion" between Thomas and Mare.  (Id. at Ex. 170, p. 2).

Opinion "B" provided:

> It is my opinion, based on my knowledge of and experience in the staffing services industry and my review of Dawn Thomas' deposition testimony, that Greig Mare and Dawn Thomas were colluding together from the beginning, or close to the beginning, of the relationship between EPS and Bake One, including in connection with EPS payments to the purported employees who did not work at Bake One (Felix Sandy, Virginia Broadfoot, and Alejandro Acosta) which were deposited into Greig or Virginia Mare's bank accounts.

3

(Horne Depo. at Ex. 170 at p. 5).  Horne then attempts to buttress his speculative conclusion that Greig Mare ("Mare") and Thomas were "colluding" by listing several purported fact sets in which Horne concludes that communications between Mare and Thomas could not have happened the way Mare and Thomas both agree they occurred.

Notably, Horne has never met Mare.  (See Id. at p. 73, ll. 1-3). Likewise, prior to this case, Horne never heard of Thomas or EPS.  (See Id. at p. 34, ll. 18-22).  Consequently, all he knows about what happened during conversations between Mare and Thomas is what Horne read in their depositions.  Horne has no first hand knowledge of what actually occurred in any meetings or conversations between Thomas and Mare.

## Horne's Purported "Fact" Set No. 1

Thomas testified that when she started EPS, she told Mare she was opening her new business and wanted to transition Plaintiff's business to EPS, which is common in the staffing industry.  (Horne Depo. at Ex. 110, p. 5-6).  Horne disagrees and provides that the transition, to which he has no direct knowledge, was not a common one in the labor staffing industry.  (Id. at p. 6).  He goes on to speculate that he expects that Mare and Thomas had

"quite a significant conversation surrounding the transaction…and that this would have been memorable…" (Id.).

Horne admitted that apart from his own experience in moving employees from one company to another company, he has no factual basis to support the conclusions stated under No. B-1. (See Id. at p. 135, l. 19 to p. 136, l. 9).

## Horne's Purported "Fact" Set No. 4

Horne provides that "the owner of a staffing service company is personally responsible, beyond the corporation, for mismanagement or failing to comply with some of the applicable government regulatory requirements." (Id. at Ex. 170, p. 7, item no. 4). Horne admitted he does not have a law degree and that he is not an expert in the legal field. (See Id. at p. 142, ll. 8-13).

## Horne's Purported "Fact" Set No. 5

Horne concludes that Thomas intentionally failed to follow what he contends are the proper procedures to verify an employee's right to work in the United States and that Thomas "turned a blind eye to her employees' failure to follow [the proper procedures], as a way of permitting personnel to be added to Bake One's payroll without proper verification by EPS." (Id. at p. 8, item no. 5).

**Horne's Purported "Fact" Set No. 6**

Horne once again crawls inside Thomas' head and concludes that Thomas knew allowing Mare to add workers to Plaintiff's payroll without Thomas obtaining the proper employment verification forms prior to the employee starting work was wrong and she simply turned a "blind eye" to this practice.  (Id. at p. 9, item no. 6).

**Horne's Purported "Fact" Set No. 7**

Horne states that EPS' website is "misleading."  (Id. at p. 9, item no. 7).

**Horne's Purported "Fact" Set No. 8**

In particular, Horne ignores Mare's and Thomas' undisputed testimony as to how an April 2008 meeting between Mare and Thomas occurred and inserts his own, purely speculative and unsupported opinion that that conversation "could not have happened this way."  (Id. at p. 10, item no. 8).

According to the evidence, in late April 2008, Thomas decided to seek a raise in the markup EPS charged Plaintiff, so she met with Mare. According to Thomas, she requested an increase in the markup to 41% and Mare agreed without objection, before ever bringing up any request for

payments from EPS to him[1].  (See Deposition of Dawn Thomas, hereinafter "Thomas Depo.," at p. 242, ll. 2-7 and p. 311).  Later in the meeting, and after the markup issue had been resolved, Mare requested that EPS pay him 2% of each invoice EPS sent to Plaintiff.  (Id.).  Although Thomas initially objected to this, she eventually relented.  EPS made the 2% payments to Mare.

According to Mare, the subject of an increase in markup was never discussed in the late April 2008 meeting with Thomas or at any other time. (See Deposition of Greig Mare, hereinafter the "Mare Depo.," at p. 53 and 55-56).  In fact, Mare testified he was never aware that EPS' markup had increased during EPS' relationship with Plaintiff.  (Mare Depo. at p. 53 and 55-56).  Instead, Mare was clear that he never agreed to an increased markup to compensate him for the 2% payment from EPS to GLM.  (Id. at p. 120).

While Horne is quick to offer his opinion that Thomas and Mare were "colluding" in this meeting, he admits, however, that he has no factual information to show the meeting between Thomas and Mare involving the increase in markup to 41% happened any differently than as Thomas and Mare described it.  (See Id. at p. 152, ll. 10-24).

---

[1] While Plaintiff contends this was a significant event, EPS raised its markup with several of its other customers at this time.  (Thomas Depo. at p. 346, ll. 6-11).

## CITATION OF LEGAL AUTHORITY

### I.      Applicable Law.

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

Rule 704 of the Federal Rules of Evidence provides:

> **(a) In General--Not Automatically Objectionable.** An opinion is not objectionable just because it embraces an ultimate issue.

The advisory committee notes to Rule 704 qualify Rule 704(a) as follows:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day…

Whether expert opinion testimony is admissible under Rule 702 depends, in part, on whether it will "assist the trier of fact in either understand[ing] the evidence or…determin[ing] a fact in issue.   <u>See</u>

Cambridge Univ. Press v. Becker, 2009WL7586776 at *2 (N.D. Ga. Sep. 3, 2009), *citing* Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207 (D.C. Cir. 1997), and Fed.R.Evid. 702.  Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not admissible.  See Becker at *2.

## II.   Horne Is Not Qualified To Express An Opinion As To The Existence of Alleged Collusion.

### (Horne's Opinions "A," "B" and "Fact" Set No. 8)

The Eleventh Circuit has held where a statistician attempted to give his opinion that a conspiracy existed and that certain bids by the defendants were "signals" to the co-conspirators, the trial court properly excluded those opinions since they were outside the statistician's competence.  See City of Tuscaloosa v. Harcros Chem's., Inc., 158 F.3d 548, 565 (11th Cir. 1999).

Horne is purportedly an expert in the area of staffing services.  He is not a mind reader who is gifted with some special ability to determine what occurred between Thomas and Mare with regard to any alleged collusion. Undeniably, Horne has no expertise that allows him to provide an opinion as to alleged "collusion" between Thomas and Mare.

## III.   Horne's Opinions Concerning Alleged Collusion Between Thomas and Mare Are Pure Speculation.

### (Horne's Opinions "A," "B" and "Fact" Set Nos. 5, 6 & 8)

## Horne's "Fact" Set Nos. 5 & 6

Horne concludes that Thomas intentionally failed to follow certain procedures for verifying an employee's eligibility to work and that she "turned a blind eye" to EPS' employees' failure to follow such procedures. Horne also asserts that in allowing such acts by EPS' employees, Thomas knew what she was doing was wrong.

Horne's conclusions in his Fact Set Nos. 5 and 6 are nothing more than pure speculation. Horne cannot testify about what another person, whom he has never met, did intentionally or knew was wrong.

## Horne's "Fact" Set No. 8

Horne has never met Mare and, prior to this case, has never even heard of Thomas or EPS. Both Thomas and Mare have provided depositions in which, without dispute, show that an increase in EPS' markup was never part of any alleged plan, scheme or collusion. Mare testified he was never aware that EPS had raised its markup.

Despite testimony from the only two people present for the discussion, Horne, in what can only be characterized as a blatant attempt to present some evidence to defend against EPS and Thomas' Motion for Partial Summary Judgment on the increased markup issue, contends Thomas and Mare had to have been colluding to raise EPS' markup. This is, largely,

based on Horne's "experience," another buzz word often used by experts in an attempt to support an otherwise unsupportable position.

Quite simply, Horne has no idea what occurred during the April 2008 meeting between Thomas and Mare other than what Thomas and Mare claimed occurred.  In fact, Horne admitted it was entirely possible the meeting occurred just as Thomas and Mare described.  In the end, Horne's "opinion" that there was "collusion" between Thomas and Mare is pure speculation and, therefore, should be stricken.

## IV. Horne's Opinions Concerning Alleged Collusion Will Not Assist The Trier Of Fact.

**(Horne's Opinions "A," "B" and "Fact" Set Nos. 1, 5, 6, 7 & 8)**

In order for an expert opinion to be admissible, it must be one that will assist the trier of fact.  Fed. R. Evid. 702(a).  Where the topic on which the expert seeks to express an expert opinion is not one outside the knowledge of the average layman, the topic is not one on which an expert opinion is needed (i.e., it will not assist the trier of fact).

## Horne's "Fact" Set No. 1

Horne seeks to testify that the transition of Plaintiff to EPS was not a common occurrence and that Horne expects Thomas and Mare had a more significant conversation about this which would have been memorable. However, the jury does not need an "expert" to assist it to reach such

conclusions as the jury is perfectly capable of reaching such a conclusion on their own.

## Horne's "Fact" Set Nos. 5 & 6

Horne seeks to testify that Thomas failed to follow proper procedures to verify employees' eligibility to work and that she turned a "blind eye" to EPS' employees' alleged actions in not following those procedures as a way of allowing personnel to be added to Plaintiff's payroll.

Again, the jury is perfectly capable of reaching this potential conclusion without the aid of Horne's opinion.   The jury needs no expert assistance to determine whether Thomas "turned a blind eye" and failed to follow whatever procedures this Court will instruct the jury apply to this case.

## Horne's "Fact" Set No. 7

The jury does not need an expert to help it decide whether EPS' website is misleading or not.  This is yet another example of an area where expert testimony will not assist the jury.   Consequently, such testimony should not be allowed.

## Horne's "Fact" Set No. 8

Where a statistician attempted to offer expert opinions that a set of documents showed "collusion" in a bid rigging case, the court properly

excluded his opinions on collusion.  <u>City of Tuscaloosa</u>, 158 F.3d at 565. The Eleventh Circuit affirmed the trial court's ruling that such opinions did not assist the trier of fact since the jury was "entirely capable of determining whether or not to draw such conclusions without any technical assistance…" <u>Id</u>.  The Eleventh Circuit held in at least one other case that an expert may not give an opinion that "collusive price fixing" had occurred since it would not assist the trier of fact.  <u>See</u> <u>Williamson Oil Co., Inc. v. Philip Morris USA</u>, 346 F.3d 1287, 1322-23 (11th Cir. 2003).

In the case at bar, the jury is able to determine whether or not Thomas and Mare colluded improperly to raise EPS' markup from 35% to 41%.  The jury does not need an expert to tell it how to find on this point, and allowing such an "expert" opinion is improper.  <u>See</u> <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990) and <u>Haney v. Mizell Mem. Hosp.</u>, 744 F.2d 1467, 1474 (11th Cir. 1984).  The Advisory Committee notes to Rule 704 make it clear that questions which would merely allow an expert witness to tell the jury what result to reach are not permitted.  <u>See</u> <u>Owen v. Kerr-McGee Corp.</u>, 698 F.2d 236, 240 (5th Cir. 1983).


**V.    <u>Horne's Opinions Seek To Offer Testimony As To Thomas and Mare's State Of Mind.</u>**

**(Horne's Opinions "A," "B"  and "Fact" Set Nos. 5, 6 & 8)**

An expert is not allowed to testify as to a party's state of mind.  See, e.g., Iacangelo v. Georgetown Univ., 560 F. Supp.2d 53 (D.D.C. 2008). Consequently, Horne cannot testify as to what would have been "memorable" for any witness involved in this case.

### Horne's "Fact" Set Nos. 5 & 6

As stated above, Horne cannot testify to Thomas' state of mind (i.e., turning a blind eye).  See Iacangelo, *supra*.

### Horne's "Fact" Set No. 8

Horne also cannot testify that Mare and Thomas were colluding since this involves testimony that bears on their states of mind.

## VI.   Horne Seeks To Supplant This Court And Charge The Jury On A Purely Legal Point.

### (Horne's "Fact" Set No. 4)

Rule 704 does not allow an expert to testify as to legal conclusions.  See Owen v. Kerr-McGee Corp., 698 F.2d at 240.  Courts must remain vigilant against admission of legal conclusions and an expert witness may not substitute for the court in charging jury regarding the applicable law.  See U.S. v. Milton, 555 F.2d 1198 (5th Cir. 1977).  As one Circuit has noted, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal

standards." <u>Burkhart v. Washington Metro. Area Transit Auth.</u>, 112 F.3d at 1213.  In no instance can a witness be allowed to define the legal issues in a case. <u>See</u> <u>Specht v. Jensen</u>, 853 F.2d 805, 810 (10th Cir. 1988).

In the instant action, Horne seeks to offer an opinion as to Thomas' legal liability for the alleged acts of EPS and its employees.  Since the Court is the sole source for educating the jury as to the applicable law, allowing Horne to do so is improper.

## CONCLUSION

EPS and Thomas respectfully request that the Court grant its Motion and disallow any testimony from Horne as outlined above.  Horne seeks to offer "opinions" which will not assist the trier of fact, are speculative, involve solely a legal conclusion, involve a party's state of mind and are one Horne is not qualified to give.

Accordingly, this Court should strike Horne's Report, testimony and prevent him from offering any opinions that:

1. The transition of Plaintiff's business to EPS was not a common one and involved a significant discussion between Thomas and Mare;

2. Instruct the jury as to the Thomas' legal liability for EPS' alleged acts;

3. Thomas intentionally failed to follow proper procedures to verify employees' eligibility to work for Plaintiff;

4. Thomas "turned a blind eye" to EPS' employees' alleged failure to follow proper procedures to verify employees' eligibility to work for Plaintiff;

5. Thomas knew she was wrong in failing to follow the proper procedures to verify employees' eligibility to work for Plaintiff;

6. EPS' website is misleading;

7. Thomas and Mare were in "collusion" together and/or "colluded" to raise EPS' markup rate; and

8. The April 2008 meeting between Mare and Thomas where Mare agreed to allow EPS to raise its markup rate from 35% to 41% could not have happened the way Mare and Thomas described it.

This 12th day of December, 2011.

/s/Todd E. Hatcher
Todd E. Hatcher
thatcher@brockclay.com
Ga. Bar No. 337507

BROCK CLAY CALHOUN & ROGERS, LLC
400 Galleria Parkway
Suite 1440
Atlanta, Georgia 30339
Phone: 770.422.1776
Fax: 678.784.3572

Attorney for Expert Personnel Solutions, LLC
and Dawn Thomas (f/k/a Dawn Bell)

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BAKE ONE, INC., a Georgia    :
Corporation,    :
   :
      Plaintiff,    :
   :
v.    :     Case No.: 1 10:CV-1046
   :
GREIG L. MARE; VIRGINIA    :     JURY TRIAL
("GINNY") L. MARE (a/k/a    :     DEMANDED
VIRGINIA BROADFOOT); GLM    :
VENTURE, LLC; BRANT    :
CONLEY; LANDMARK    :
PACKAGING, LLC; LINPARK    :
SALES, INC.; DONALD SCOTT    :
GREENWAY; EXPERT    :
PERSONNEL SOLUTIONS, LLC;    :
DAWN THOMAS (f/k/a DAWN    :
BELL); LIPSEY LOGISTICS    :
WORLDWIDE, LLC; JOHN AND    :
JANE DOES 1-10 and JOHN DOE    :
COMPANIES 1-10;    :
   :
      Defendants.    :

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1D, NDGa</u>

Pursuant to L.R. 7.1D, NDGa the undersigned counsel hereby certifies that the foregoing pleading was prepared with one of the font and point selections approved by the court in L.R. 5.1C, NDGa.

This 12th day of December, 2011.

/s/Todd E. Hatcher
Todd E. Hatcher
thatcher@brockclay.com
Ga. Bar No. 337507

BROCK CLAY CALHOUN & ROGERS, LLC
400 Galleria Parkway
Suite 1440
Atlanta, Georgia 30339
Phone:  770.422.1776
Fax:  678.784.3572

Attorney for Expert Personnel Solutions, LLC
and Dawn Thomas (f/k/a Dawn Bell)

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BAKE ONE, INC., a Georgia
Corporation,

        Plaintiff,

v.

GREIG L. MARE; VIRGINIA
("GINNY") L. MARE (a/k/a
VIRGINIA BROADFOOT); GLM
VENTURE, LLC; BRANT
CONLEY;              LANDMARK
PACKAGING, LLC; LINPARK
SALES, INC.; DONALD SCOTT
GREENWAY;              EXPERT
PERSONNEL SOLUTIONS, LLC;
DAWN THOMAS (f/k/a DAWN
BELL); LIPSEY LOGISTICS
WORLDWIDE, LLC; JOHN AND
JANE DOES 1-10 and JOHN DOE
COMPANIES 1-10;

        Defendants.

Case No.: 1 10:CV-1046

JURY TRIAL
DEMANDED

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December, 2011, I electronically filed the **Defendants Expert Personnel Solutions, LLC and Dawn Thomas' Memorandum of Law In Support of Their Motion In Limine And To Strike Testimony And Expert Report of Cecil Eugene Horne** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to the following

attorneys of record:

Mark S. VanderBroeck, Esq.
mark.vanderbroek@troutmansanders.com
Christopher A. Wiech, Esq.
chris.wiech@troutmansanders.com
Bradley M. Davis, Esq.
bradley.davis@troutmansanders.com
Bradley J. Harrison, Esq.
bradley.harrison@troutmansanders.com
Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, NE
Atlanta, Georgia 30308-2216
*Attorneys for Plaintiff*

I further certify that on December 12th, 2011, a copy of the foregoing

**Defendants Expert Personnel Solutions, LLC and Dawn Thomas'**

**Memorandum of Law In Support of Their Motion In Limine And To**

**Strike Testimony And Expert Report of Cecil Eugene Horne** was served

on the following parties via first class U.S. Mail, postage prepaid:


GLM Ventures, LLC
Greig L. Mare
Virginia L. Mare
greigmare@yahoo.com
314 Summer Garden Drive
Marietta, Georgia 30064

This 12th day of December, 2011.

/s/Todd E. Hatcher
Todd E. Hatcher
thatcher@brockclay.com
Ga. Bar No. 337507

BROCK CLAY CALHOUN & ROGERS, LLC
400 Galleria Parkway
Suite 1440
Atlanta, Georgia 30339
Phone: 770.422.1776
Fax: 678.784.3572

Attorney for Expert Personnel Solutions, LLC
and Dawn Thomas (f/k/a Dawn Bell)

1293771_1