IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BAKE ONE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| v. ) | |
| ) | NUMBER 1:10-cv-1046-TCB |
| GREIG L. MARE, et al., ) | |
| ) | |
| Defendants. ) | |

O R D E R

This case comes before the Court on Defendants Expert Personnel Solutions, LLC ("EPS") and Dawn Thomas's motion for partial summary judgment [135] and accompanying motion for oral argument [136].

I.   Background

Plaintiff Bake One, Inc. manufactures baked goods and sells them to bakery cafés and retail stores.[1]  EPS is a provider of temporary staffing services, and Thomas is its owner and president.  From late 2005 through

---

[1] The facts set forth in this section are based on the record evidence viewed in the light most favorable to Bake One.

December 2009, EPS provided staffing services to Bake One. For most of that time, EPS's primary point of contact at Bake One was Defendant Greig Mare, Bake One's former general manager.

During this time, the regular dealings between EPS and Bake One proceeded as follows. Each week, Mare submitted the hours that EPS employees worked at Bake One to EPS via email, fax or telephone. EPS then used its bank's website to direct-deposit funds into the accounts of employees who opted to be paid in that fashion. For all other employees, EPS hand delivered checks to Bake One's facility. At the same time, EPS delivered pay stubs to Bake One's facility for the employees who were paid via direct deposit.[2] After the employees were paid, EPS sent invoices to Bake One via email or fax. Bake One then paid EPS the employees' wages, plus EPS's markup rate, by mailing a check to EPS.[3]

---

[2] Sometimes EPS gave the checks and pay stubs directly to the employees, and other times it left them with Mare for distribution. In any event, the checks and pay stubs were never mailed.

[3] Thomas testified during her deposition that "[a]t some point we got to where I was picking up checks. But I think for the most part, they were—they mailed their checks out." However, Mare's declaration states that the checks were mailed, and there is no other evidence that the checks were delivered by any other means. Construing the evidence in the light most favorable to Bake One, the Court will assume that all of the checks were mailed.

In March 2007, Mare approached Thomas and asked her to add a fictitious employee named Felix Sandy to Bake One's payroll and to direct deposit Sandy's pay into Mare's bank account.[4] Thomas agreed to do so as a kickback for the business Mare was directing to EPS. From March 2007 to April 2008, Sandy was included on Bake One's payroll. During that time, Sandy's wages were direct-deposited into Mare's account, and Bake One was billed for those wages, plus EPS's markup rate, following the procedures described above.

In May 2007, Mare asked Thomas to add another fictitious employee named Virginia Broadfoot to Bake One's payroll. Thomas agreed to do so, and from May 2007 to March 2008, Broadfoot was included on Bake One's payroll.[5] During that time, Broadfoot's wages were direct-deposited into an account owned by Greig Mare's wife, Virginia Mare,[6] and Bake One was

---

[4] Felix Sandy was the name of an actual former employee of Bake One.

[5] In addition to the period when Broadfoot regularly appeared on Bake One's payroll, EPS billed Bake One for hours purportedly worked by Broadfoot on two other occasions, one in August 2009 and the other in September 2009.

[6] As used in this order, "Mare" refers solely to Greig Mare; "the Mares" refers collectively to Greig and Virginia Mare; and whenever it is necessary to refer to Virginia Mare individually, her full name will be used. In the record, Virginia Mare is sometimes referred to by her nickname, "Ginny" Mare, her maiden name, Virginia Lee, or her alias, Virginia Broadfoot. Broadfoot is her stepfather's surname.

billed for those wages, plus EPS's markup rate, again using the procedures described above.

In April 2008, Mare and Thomas agreed to remove Sandy from the payroll because of potential immigration issues and to instead use the name of another former Bake One employee, Alejandro Acosta. From April 2008 to September 2009, Acosta was included on Bake One's payroll. During that time, Acosta's wages were direct-deposited into Mare's account, and Bake One was billed for those wages, plus EPS's markup rate.

Around the same time, Mare and Thomas agreed to take Broadfoot off of Bake One's payroll and instead have EPS make kickback payments directly to GLM, a company formed by the Mares for the purpose of receiving such payments. Mare and Thomas also agreed that EPS would increase its markup rate from thirty-five percent to forty-one percent.

From May 2008 to September 2009, these kickback payments were made as follows. Each week, Mare calculated the kickback amount as a percentage of that week's invoice from EPS to Bake One.[7] Mare then communicated the kickback amount to Virginia Mare, who prepared an

---

[7] Mare and Thomas originally agreed that the kickbacks would be two percent of each invoice. However, this amount was later reduced to one percent.

invoice from GLM to EPS in that amount and emailed the invoice to EPS.[8] EPS sometimes paid the invoices by mailing a check to GLM, and other times Virginia Mare picked up a check from EPS.

In September 2009, Thomas met with Stanley Fur of Bake One and told him about the fictitious employees and kickback payments. EPS then removed Acosta from Bake One's payroll and stopped making the kickback payments to GLM. Shortly thereafter, EPS also agreed to reduce its markup rate. In December 2009, however, EPS resigned as Bake One's staffing vendor.

On April 9, 2010, Bake One filed this action, bringing myriad claims against EPS, Thomas, the Mares, GLM and several other Defendants. Bake One brings only two federal claims against EPS and Thomas: (1) violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); and (2) conspiracy to violate federal RICO, 18 U.S.C. § 1962(d). It also brings state-law claims against EPS and Thomas for (1) violations of the Georgia RICO Act; (2) conspiracy to violate the Georgia RICO Act; (3) fraud; (4) aiding and abetting breaches of duty of loyalty and fiduciary duty; (5) aiding and abetting conversion; (6) money

---

[8] The GLM invoices purported to bill EPS for "promotions"; however, no services were ever rendered.

had and received; and (7) civil conspiracy.  On January 9, 2012, with leave of Court, Bake One amended its complaint to add a state-law claim against EPS for breach of contract.

With respect to its federal RICO claims, Bake One invokes this Court's federal-question jurisdiction under 28 U.S.C. § 1331.  Bake One's state-law claims are based upon this Court's supplemental jurisdiction under 28 U.S.C. § 1367.  It is undisputed that diversity of citizenship is lacking and that no other basis for jurisdiction exists for Bake One's state-law claims.

On October 3, 2011, EPS and Thomas filed their motion for summary judgment.  In the motion, EPS and Thomas argue that they are entitled to summary judgment on Bake One's federal RICO claims and that the Court should decline to exercise supplemental jurisdiction over Bake One's state-law claims.

II.   Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d

1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex*, 477 U.S. at 324). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 323).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must "'go beyond the pleadings,' and

by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

III.   Discussion

   A.   Substantive RICO Claim

A civil RICO claim brought under 18 U.S.C. § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985).  In order to establish "a pattern of racketeering activity," the plaintiff must show that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

In support of its RICO claim, Bake One relies on what it contends are numerous predicate acts of mail and wire fraud committed over a period of two and a half years.  In their motion for summary judgment, EPS and Thomas argue that their conduct did not amount to mail or wire fraud; thus, there are no predicate acts upon which Bake One's RICO claim could

8

be based. They further argue that even assuming the predicate acts, they did not engage in a pattern of racketeering activity. The Court agrees that even if Bake One is correct with respect to the predicate acts, those acts do not establish a pattern of racketeering activity. Therefore, the Court will grant EPS and Thomas summary judgment on that ground and will not reach the parties' arguments with respect to the predicate acts.[9]

"The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." *Id.* at 1265. The Supreme Court has explained that continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). In this case, Bake One seeks to establish

---

[9] EPS and Thomas also argue that Bake One's federal RICO claims against EPS fail as a matter of law because such claims cannot be brought against a corporation, but this argument is meritless. *See, e.g., United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1274-77 (11th Cir. 2000) (holding that the three defendant corporations were distinct "persons" under RICO).

closed-ended continuity, which may be shown "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242.

The question then becomes what constitutes a "substantial period of time" for purposes of the continuity requirement. The Supreme Court has made clear that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.'" *Id.* at 242. However, the Supreme Court has not established a clear rule for predicate acts extending over longer periods.

Lower courts have considered several factors in determining whether a particular case involves a "substantial period of time." These include "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *DeGuelle v. Camilli*, 664 F.3d 192, 203 (7th Cir. 2011) (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)).

In the Eleventh Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) (quoting *Jackson*, 372 F.3d at 1265).

10

"Furthermore, 'where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time.'" *Id.* (quoting *Jackson*, 372 at 1267).  In *Ferrell*, for example, the Eleventh Circuit found that a single scheme involving two victims failed to establish closed-ended continuity even though it extended from late 2004 to mid-2006.

In this case, the predicate acts occurred on a weekly basis for about two and a half years.  However, those acts were all part of a single scheme directed at a single victim.  Specifically, Defendants defrauded Bake One by causing it to pay inflated prices for staffing services.  Although this was accomplished in two ways—by billing Bake One for fictitious employees and by charging it an inflated markup rate—the predicate acts were of limited variety.  Moreover, the scheme caused a singular injury to Bake One, i.e., the amount it paid in excess of the market rate for the employees who actually worked for it.

Based on all of these factors, the Court finds that two and a half years was not a substantial period of time for purposes of the continuity element

of Bake One's RICO claim under 18 U.S.C. § 1962(c). Consequently, EPS and Thomas will be granted summary judgment on that claim.

### B.     RICO Conspiracy Claim

Because Bake One's substantive federal RICO claim fails, so does its conspiracy claim. *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1153 (11th Cir. 2011) ("Since we have already upheld the district court's dismissal of the RICO claims based on § 1962(c), the only substantive RICO provision that [the plaintiff] relies on, [it] cannot prevail on a conspiracy claim."). Therefore, EPS and Thomas will be granted summary judgment on that claim as well.

### C.     State-Law Claims

EPS and Thomas argue that if the Court grants summary judgment on Bake One's federal RICO claims, its remaining state-law claims should be "transferred to the Superior Court of Cobb County." Of course, this Court cannot "transfer" a case to state court. However, Bake One's federal RICO claims were the only basis for this Court's original jurisdiction in this case, and Bake One's state-law claims are all brought on the basis of supplemental jurisdiction. Thus, it may be appropriate for the Court to

dismiss the state-law claims without prejudice so that they may be brought in state court.

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.[10]  In exercising that discretion, the court should "take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (quoting *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).

The Supreme Court has recognized that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Consequently, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as

---

[10] Although the statute refers to claims that have been "dismissed," it also applies where to claims that have been disposed of on summary judgment.  *See Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (after holding that the defendants were entitled to summary judgment on the federal claims, noting that the district court would have discretion whether to consider the state-law claims on remand).

13

here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Bake One has failed to articulate why it would be proper to exercise supplemental jurisdiction over its state-law claims even if EPS and Thomas are granted summary judgment on Bake One's federal RICO claims. There are a few situations in which such an exercise of supplemental jurisdiction is proper, but only one is potentially applicable here. Specifically, considerations of convenience and judicial economy may justify the continued exercise of supplemental jurisdiction if "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th Cir. 2006) (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347-48 (7th Cir. 1986)).

This case has been pending for nearly two and a half years. Thus, it is at least arguable that "substantial judicial resources have already been committed." However, the litigation has thus far consisted primarily of discovery and settlement negotiations, which have resulted in the voluntary dismissal of Bake One's claims against all of the other Defendants. The parties' settlement agreements remain binding, and the discovery materials

they have obtained may be used in any state-court proceeding. Therefore, dismissing Bake One's state-law claims will not require a "substantial duplication of effort" by the parties such that their convenience would justify the continued exercise of supplemental jurisdiction. Moreover, the Court has made no substantive rulings on any of Bake One's state-law claims; thus, the Court has not gained any special familiarity with those claims. Consequently, dismissing those claims will not require a "substantial duplication of effort" by the relevant state court, and judicial economy does not warrant the continued exercise of supplemental jurisdiction.

Fairness and comity also weigh in favor of dismissing Bake One's state-law claims. First, the period of limitations for any claim asserted under supplemental jurisdiction is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, Bake One would suffer no apparent prejudice or unfairness by having to litigate its claims in state court. In addition, "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). There is no indication that the resolution of

Bake One's state-law claims would be simple.  Therefore, those claims should be resolved by a state court.

In sum, the balance of factors weighs against the Court exercising supplemental jurisdiction in this case.  Consequently, the Court will dismiss Bake One's state-law claims against EPS and Thomas without prejudice so that those claims may be brought in state court.

### IV.   Conclusion

EPS and Thomas's motion for partial summary judgment and to dismiss for lack of subject-matter jurisdiction [135] is GRANTED IN PART and DENIED IN PART.  Their motion for summary judgment on Bake One's federal RICO claims against them (Counts I and II) is GRANTED, and the Clerk is DIRECTED to enter final judgment in favor of EPS and Thomas on those claims.  Their motion to dismiss Bake One's state-law claims against them (Counts III-V, VIII and X-XV) for lack of subject-matter jurisdiction is GRANTED, and those claims are hereby DISMISSED WITHOUT PREJUDICE.  Their motion for summary judgment on (1) Bake One's claim for aiding and abetting breaches of duty of loyalty and fiduciary duty (Count VIII), and (2) Bake One's entitlement to damages based on EPS's inflated markup rate is DENIED AS MOOT.

EPS and Thomas's motion for oral argument [136] is also DENIED AS MOOT.

IT IS SO ORDERED this 27th day of September, 2012.

                                                Timothy C. Batten, Sr.
                                                United States District Judge